UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA M. HILSON,

Plaintiff,

v.

DETROIT RESCUE MISSION MINISTRIES, et al.,

Defendants.

Case No. 24-cv-12447

Honorable Robert J. White
Magistrate Judge David R. Grand

**ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS, (2) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL, AND (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are two reports and recommendations from Magistrate Judge David R. Grand entered on July 8, 2026. (ECF Nos. 58-59). The magistrate judge first recommended that the Court deny Defendant Detroit Rescue Mission Ministries' motion for summary judgment. (ECF No. 58; *see also* ECF No. 48). Separately, the magistrate judge recommended that the Court deny without prejudice *Pro Se* Plaintiff Tina M. Hilson's unopposed motion to voluntarily dismiss a portion of her claims. (ECF No. 59; *see also* ECF Nos. 55-56). Defendant filed timely objections to each report and recommendation. (ECF Nos. 60-61).

For the following reasons, the Court (1) overrules Defendant's objections, (2) adopts each report and recommendation, (3) denies without prejudice Plaintiff's motion for voluntary dismissal, and (4) denies Defendant's motion for summary judgment.

## I. Background

Since Defendant does not object to magistrate judge's factual summaries, the Court finds the recitation of the underlying facts accurate, and it will adopt the magistrate judge's summary of those facts as they appear in the reports and recommendations at issue. (ECF No. 58, PageID.1150-54; ECF No. 59, PageID.1168-70).

## II. Legal Standard

The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to specify the part of the order, proposed findings, recommendations, or report to which [the party] objects and to state the basis for the objection." *Pearce*, 893 F.3d at 346 (internal quotation marks omitted).

## III. Analysis

### A. Plaintiff's Motion for Voluntary Dismissal

Defendant objects to the magistrate judge's decision to deny Plaintiff's motion without prejudice because (1) the motion was uncontested and Plaintiff's requested relief sufficiently clear; and (2) denial without prejudice is neither a preferred nor practical resolution under the circumstances. (ECF No. 61, PageID.1194-98). Plaintiff's motion specifically sought "to remove and or Dismiss from the . . . complaint the [Specific] Claim for the [General Damages] Pursuant to" Fed. R. Civ. P. 41(a)(2) and E.D. Mich. L.R. 7.1. (ECF No. 55, PageID.1144 (brackets in original)). And Defendant filed a concurrence agreeing to dismiss "the specified claim" "for general damages." (ECF No. 56, PageID.1147).

As an initial matter, Defendant specifically argues that "the relief sought by [Plaintiff] was clear, she sought to dismiss all claims for general, or compensatory, damages (as distinct from punitive damages)." (ECF No. 61, PageID.1195). But it is far from clear that Plaintiff intended to seek dismissal of any claim for compensatory damages, especially considering that general and compensatory damages are not legally the same. Rather, general damages are a specific subset of compensatory damages. *See Lothschuetz v. Carpenter*, 898 F.2d 1200, 1204 (1990) ("[C]laims for compensatory damages involve two aspects – 'general' and 'special' damages. General damages compensate a plaintiff for harm to his reputation or emotional well-being; special damages, on the other hand, are awarded for losses of

an economic or pecuniary nature.") (quotation marks and citation omitted); *see also* Restatement (Second) of Torts, § 904 (A.L.I. 1979).

Plaintiff's initial complaint asserted two specific claims for damages—a claim for "compensatory damages" for Defendant's alleged wrongful termination and discrimination, and a claim for "general damages" to compensate Plaintiff's pain and suffering, emotional distress, and lost wages. (ECF No. 1, PageID.10). But in the operative amended complaint Plaintiff later filed with assistance from the Detroit Mercy Law *Pro Se* Legal Assistance Clinic, she only generally requested awards for "compensatory" and "punitive" damages. (ECF No. 31, PageID.352-53).

Even accepting that Plaintiff intended to dismiss any claim for general damages as articulated in her initial complaint (i.e., to dismiss claims for pain and suffering, emotional distress, and lost wages), the Court cannot conclude that this includes *all* the compensatory damages (as opposed to punitive damages) claimed in the operative amended complaint. Rather, Plaintiff could still claim specific, compensatory damages in addition to punitive damages, even were any claims for the general subset of compensatory damages dismissed. And it remains unclear how such a dismissal would square with Plaintiff's operative request for compensatory damages that does not specify any claim for general versus specific damages.

Furthermore, under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request . . . by court order, on terms that the court considers proper."

*Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 730 (6th Cir. 2004). However, "[t]he Sixth Circuit interprets Rule 41 as permitting a plaintiff to dismiss only the entire action, not individual claims or parties." *Igo v. Sun Life Assur. Co. of Canada*, 652 F. Supp. 3d 929, 936 (S.D. Oh. 2023).

Accordingly, where (1) Plaintiff's cited authority does not permit the relief she apparently sought and (2) the specific nature of this relief remains unclear, the Court concludes that the magistrate judge properly denied Plaintiff's motion for voluntary dismissal. It is also telling that Defendant claims Plaintiff's requested relief was sufficiently clear, but Plaintiff has not objected to the magistrate judge's conclusion otherwise.

To the extent the magistrate judge denied Plaintiff's motion without prejudice and with leave to refile, the Court agrees, particularly considering Plaintiff's *pro se* status, that she should be permitted the opportunity to clarify the nature of her requested relief (i.e, which damage claims she intended to dismiss and which should remain in this case). But given the inapplicability of Fed. R. Civ. P. 41(a)(2), any renewed motion should be brought to amend her complaint under Rule 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave. The court should freely give leave when justice so requires."). Alternatively, the parties may agree to any amendment by stipulation to avoid further motion practice. *See* Fed. R. Civ. P.

1(a)(2) ("[A] party may amend its pleading . . . with the opposing party's written consent . . . .").

Lastly, Defendant argues that further motion practice is unlikely to resolve any technical ambiguity in Plaintiff's motion, and that a brief status conference is the most practical solution to confirm the scope of relief requested therein. (ECF No. 61, PageID.1197-98). As discussed, however, the issues with Plaintiff's motion extend beyond mere technical ambiguities, particularly considering her improper reliance on Rule 41(a)(2). Nevertheless, the Court acknowledges that the parties to date have appeared numerous times for telephonic status conferences before the magistrate judge to discuss potential settlement. (*See* ECF No. 59, PageID.1169 n. 2). Although this case remains Plaintiff's to prosecute, the Court encourages the magistrate judge to hold a status upon entry of this order, and Plaintiff *may* at such time orally move to amend the pleadings with sufficient clarification as to what specific damage categories, if any, she still seeks to dismiss or remove from the operative complaint.

In sum, the Court overrules Defendant's objections concerning Plaintiff's motion for voluntary dismissal, adopts the magistrate's judge's report and recommendation, and denies Plaintiff's motion (1) without prejudice and (2) with leave to refile under appropriate authority and with clarification concerning the specific relief sought.

**B. Defendant's Motion for Summary Judgment**

The magistrate judge recommended denying Defendant's motion for summary judgment, concluding that genuine factual disputes existed concerning the various elements of her discrimination and failure-to-accommodate claims. (ECF No. 58, PageID.1155-66).

A party may move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). The district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In analyzing a summary judgment motion, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).

"'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Sierra Brokerage*, 712 F.3d at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Overall, the court's inquiry turns on "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Defendant raises five objections to the report and recommendation. (ECF No. 60, PageID.1173-74). None have merit.

**1. Objection One**

Defendant first argues that the magistrate judge, addressing the necessary element that Plaintiff was disabled under the Americans with Disabilities Act (ADA) when the events in question occurred, clearly erred by *sua sponte* adopting a "long COVID" theory of disability that (1) Plaintiff never raised in her response to Defendant's motion, (2) is completely unsupported by the evidence of record, and (3) the magistrate based on speculative and conclusory facts. (ECF No. 60, PageID.1175).

A "disability" under the ADA is "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Merely having an impairment does not make one disabled for purposes of the ADA." *Bryson v. Regis Corp.*, 498 F.3d 561, 575 (6th Cir. 2007). "A claimant must also establish that [the] impairment 'substantially' limits one or more 'major life activities.'" *Id.* (citation omitted). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

According to the EEOC regulations promulgated pursuant to the ADA: "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(*ii*). And "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." *Id.* at § 1630.2(j)(1)(*i*).

Further, even a temporary impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* at § 1630.2(j)(1)(*ii*); *see also id.* at § 1630.2(j)(1)(*ix*) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section."). "Whether a claimant qualifies as having a disability requires an individualized inquiry." *Bryson*, 498 F.3d at 575; *see also* 29 C.F.R. § 1630.2(j)(1)(*iv*) ("The determination of whether an impairment substantially limits a major life activity requires an individualized assessment.").

Concerning COVID-19 specifically, authority within this circuit holds that "testing positive or being exposed to COVID-19 does not make a person disabled for the purposes of the ADA." *Mendoza v. J.M. Smucker Co.*, 674 F. Supp. 3d 439, 445-46 (N.D. Oh. 2023). But this and other similar cases do not categorically exclude COVID-19 as covered, so complications from the disease beyond mere infection could still rise to the level of a disability, particularly considering the individualized inquiry required under the ADA.

Consistent with this premise, the EEOC provides the following guidance[1]:

> [D]epending on the specific facts involved in an individual employee's condition, a person with COVID-19 or Long COVID has an actual disability if the person's medical condition or any of its symptoms is a "physical or mental" impairment that "substantially limits one or more major life activities." An individualized assessment is necessary to determine whether the effects of a person's COVID-19 or Long COVID substantially limit a major life activity. This will always be a case-by-case determination that applies existing legal standards to the facts of a particular individual's circumstances.
>
> A person infected with the virus causing COVID-19 who is asymptomatic or a person whose COVID-19 results in mild symptoms similar to those of the common cold or flu that resolve in a matter of weeks—with no other consequences—will not have an actual disability within the meaning of the ADA. However, depending on the specific facts involved in a particular employee's medical condition, an individual with COVID-19 might have an actual disability . . . .

*   *   *

[1] *See Lee v. City of Columbus*, 636 F.3d 245, 256 (6th Cir. 2011) (EEOC guidance is considered persuasive authority).

> . . . COVID-19 or Long COVID . . . may affect . . . major life activities, such as caring for oneself, eating, walking, breathing, concentrating, thinking, or interacting with others. . . .
>
> Substantially Limiting: "Substantially limits" is construed broadly and should not demand extensive analysis. COVID-19 or Long COVID need not prevent, or significantly or severely restrict, a person from performing a major life activity to be considered substantially limiting under Title I of the ADA.
>
> The limitations from COVID-19 or Long COVID do not necessarily have to last any particular length of time to be substantially limiting. They also need not be long-term. For example, in discussing a hypothetical physical impairment resulting in a 20-pound lifting restriction that lasts or is expected to last several months, the EEOC has said that such an impairment is substantially limiting. App. to 29 C.F.R. § 1630.2(j)(1)(ix). By contrast, "[i]mpairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." Id.

U.S. E.E.O.C., *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, <https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws> (accessed Aug. 5, 2026).

As particularly relevant here, one example of how COVID-19 may be considered a disability provides:

> An individual diagnosed with COVID-19 who initially receives supplemental oxygen for breathing difficulties and has shortness of breath, associated fatigue, and other virus-related effects that last, or are expected to last, for several months, is substantially limited in respiratory function, and possibly major life activities involving exertion, such as walking.

*Id.*

Furthermore, *pro se* filings should be liberally construed. *Arucan v. Cambridge East Healthcare/Sava Seniorcare LLC*, 347 F. Supp. 3d 318, 335 (E.D. Mich. 2018); *see also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). "However, a party's status as a *pro se* litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence." *Arucan*, 347 F. Supp. 3d at 336; *see also Rollin v. Office of Commissioner/Dept. of Corr.*, 606 F. Supp. 3d 527, 533 (W.D. Ky. 2022) ("The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage.") (cleaned up).

Relatedly, courts cannot construct arguments on a *pro se* plaintiff's behalf because this would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Rogers v. City of Detroit*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2008) (citations omitted). In any event, courts must still determine whether the movant has satisfied their initial burden to warrant relief under Rule 56. *See Arucan*, 347 F. Supp. 3d at 335-36.

Here, Defendant argued in relevant part that there was no genuine dispute that Plaintiff was not disabled under the ADA because she only contracted COVID-19 temporarily and fully recovered within two to three months. (ECF No. 48, PageID.534-38). Plaintiff's roughly 70-page handwritten response[2] is somewhat difficult to follow, but she countered in relevant part that (1) her complications from contracting COVID-19 in November 2021 qualify as a serious impairment and disability under the ADA; (2) Defendant's contention that she fully recovered by February 2022 "is false and unsupported by any medical facts"; (3) Plaintiff's COVID-related impairments were neither temporary nor minor and required months of treatment; and (4) although "COVID-19, in and of itself, is not a disability[,] . . . long COVID qualifies" as a disability under the ADA. (*See* ECF No. 50, PageID.847, 861, 888, 893, 897-98; *see also* ECF NO. 53, PageID.1071-74). Plaintiff also sought to distinguish Defendant's caselaw regarding temporary bouts with COVID-19 from the facts of this case. (ECF No. 50, PageID.861-63, 897; *see also* ECF NO. 53, PageID.1071-73).

As an initial matter, the Court rejects Defendant's argument that the magistrate judge improperly constructed arguments on Plaintiff's behalf or otherwise erroneously advocated for her when addressing this element. Although Plaintiff's

---

[2] Plaintiff also filed a typed response that largely mirrors her handwritten one. (*See* ECF No. 53).

response is difficult to follow and only mentions "long COVID" once, she provided substantial argument regarding the lasting effects of her COVID infection and how these substantially limited her as contemplated under the ADA. It was therefore proper to resolve this key dispute even if Plaintiff never specifically claimed any formal diagnosis of long COVID. And the magistrate judge's analysis on this issue still essentially addressed the very question Defendant raised—whether Plaintiff's COVID infection and related symptoms were sufficiently minor and temporary as to preclude qualification as a disability.

Next, the Court concludes that the record presents a genuine issue of material fact regarding this element. Specifically, viewing the evidence in a light most favorable to Plaintiff, reasonable jurors could conclude that she was disabled under the ADA.

Defendant makes much of the absence in the record of any formal diagnosis of long COVID. But while Defendant's authority shows that mere infection or mild flu-like symptoms from COVID cannot make a person disabled, there is nothing to support that a COVID-related disability must be explicitly diagnosed as long COVID. Rather, the aforementioned guidance supports that COVID *or* long COVID can be a substantially-limiting disability depending on the plaintiff's individualized circumstances in a given case, and they explicitly recognize that disabling COVID complications need not be long term.

The guidance also includes as an example of a person disabled from COVID one who requires supplemental oxygen and experiences breathing difficulties and related symptoms over a period of months. Construing the record in Plaintiff's favor, reasonable jurors could conclude that this was precisely Plaintiff's experience here.

First, Plaintiff was hospitalized in November 2021 and subsequently tested positive for COVID during her stay. The record shows that Plaintiff did not require supplemental oxygen before or when she was first hospitalized, but doctors prescribed this treatment at some point later during her stay, around when she tested positive for COVID. It is undisputed that Plaintiff was discharged after a few weeks in the hospital. Critically, however, Plaintiff's subsequent medical records show she was using 3 liters of oxygen throughout February 2022, three months after she tested positive for COVID and began using supplemental oxygen. And her medical records from April 2022 show she was still using 2 liters of oxygen at this time. These facts circumstantially support that Plaintiff's COVID infection, not any condition preexisting her hospitalization and need for supplemental oxygen, caused her to experience significant breathing difficulties that required her to use supplemental oxygen for a period of almost six months.

Construing these facts in Plaintiff's favor, reasonable jurors could conclude that Plaintiff, as a result of contracting COVID, was substantially limited in at least one major life activity—breathing—for almost half a year (in contrast to more minor

complications resolving after mere weeks that EEOC guidance makes clear would not be a disability). Accordingly, the Court adopts the magistrate judge's conclusion that there is a material factual dispute concerning weather Plaintiff was disabled within the meaning of the ADA.

The Court relatedly rejects Defendant's argument that the magistrate judge improperly relied on facts too speculative or conclusory to establish a genuine factual dispute. Plaintiff's medical records, regardless of the lack of any formal diagnosis of long COVID, circumstantially support (at least when construed in Plaintiff's favor at this stage) that Plaintiff's COVID infection substantially limited her breathing for a sufficiently long period to qualify as an ADA disability.

Lastly, the Court finds no error in the magistrate judge's reliance on Plaintiff's treatment with a pulmonologist as partially supporting the existence of a genuine factual dispute. Defendant argues that this fact was too speculative or conclusory to show such a dispute because the magistrate judge wrongly concluded that Plaintiff only began this treatment after contracting COVID. (ECF No. 60, PageID.1177 n. 2). But the magistrate judge did no such thing, relying only on Plaintiff generally "treating with a pulmonologist for a period of time" to partially support the existence of a genuine factual dispute. And regardless of whether Plaintiff treated with a pulmonologist for her preexisting conditions before contracting COVID, her continued treatment contemporaneous with her post-infection need for supplemental

oxygen surely provides additional circumstantial support, when construed in Plaintiff's favor, that she was substantially limited in the major life function of breathing until at least April 2022.

In sum, the Court overrules Defendant's objection and adopts the magistrate's judge's finding that a material factual dispute exists concerning whether Plaintiff was disabled under the ADA.

**2. Objection Two**

Defendant next argues that the magistrate judge erroneously relied on Plaintiff's unsworn statements at oral argument to manufacture genuine disputes of material fact. (ECF No. 60, PageID.1179-82).

As stated, *pro se* filings should be liberally construed. *Arucan*, 347 F. Supp. 3d at 335. "However, a party's status as a *pro se* litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence." *Id.* at 336; *see also Rollin*, 606 F. Supp. at 533 ("The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage.") (cleaned up).

Furthermore, "it [is] error to rely on unsworn testimony at summary judgment." *HRT Enters. v. City of Detroit*, 163 F.4th 319, 333 (6th Cir. 2025).

However, "this error does not require reversal [if] harmless." *Id.*; *see also Harnden v. Jayco, Inc.*, 496 F.3d 579, 583 (6th Cir. 2007) ("Even if Zonker's unsworn testimony was in the form of inadmissible evidence for purposes of Rule 56, thus rendering its consideration to be in error, such error may be considered harmless if it does not affect the substantial rights of the parties.") (cleaned up).

This objection is somewhat complicated by Plaintiff's *pro se* status in this case. Specifically, while Plaintiff is a primary factual witness, she acted as her own attorney during oral argument. And although attorney argument is not evidence, an attorney is certainly permitted to argue for a specific interpretation or weight of evidence properly in the record. The Court concludes that is what occurred here.

Defendant specifically objects to the magistrate judge's reliance on Plaintiff's statements during oral argument explaining aspects of the questionnaire she completed for the EEOC. According to Defendant's summary judgment motion, Plaintiff's answers on this document, along with other record evidence, established as a matter of law that (1) Plaintiff never requested any ADA accommodation and (2) even if she did, she unreasonably requested indefinite leave. (ECF No. 48, PageID.514, 545-46).

Relying in part on Plaintiff's statements from oral argument, the magistrate judge rejected that the questionnaire definitively resolved these issues in Defendant's favor. (ECF No. 58, PageID.1162-63, 1163-64 n. 8). In doing so, the magistrate

judge importantly did not rely on the statements themselves as evidence creating genuine issues of fact. Rather, he essentially determined, after considering Plaintiff's explanation of her questionnaire answers in a manner akin to attorney argument concerning the weight or applicability of Defendant's evidence, that Plaintiff submitted sufficient admissible evidence (as shown from a document in the record seeking to extend her leave of absence) to counter her after-the-fact questionnaire responses and show material factual disputes. (*See* ECF No. 1161-65, 1163-64 n. 8).[3]

For example, the magistrate judge chose to credit Plaintiff's actual accommodation request (as shown from the aforementioned document) over her after-the-fact questionnaire responses essentially because she was not a doctor or lawyer with the technical expertise that would substantiate the accuracy of the particular legal and medical facts at issue. And were Plaintiff represented by counsel, her attorney could surely dispute the weight or applicability of the questionnaire based on a lack of client sophistication and/or knowledge of the technical factual issues involved.

Further, for the reasons stated in the following subsection of this order, the magistrate judge properly found more contemporary evidence in the record that

[3] The Court notes that there is no hearing transcript in the record to confirm what exactly was said during oral argument.

materially conflicted with Plaintiff's after-the-fact questionnaire answers and thus established genuine issues of triable fact when construing the evidence in her favor. Ultimately, it is for the jury to weigh Plaintiff's questionnaire responses against the other contemporary evidence favorable to Plaintiff at this stage.

Given the foregoing, the Court disagrees that the magistrate judge committed reversable error with respect to those statements he relied on from oral argument. Defendant's objection is therefore overruled.

### 3. Objection Three

Defendant further objects on the basis that the magistrate judge erred in finding a triable issue of fact concerning the "element" that Plaintiff requested an accommodation and engaged in the interactive process. (ECF No. 60, PageID.1182-87).

To establish a prima facie case for failure to accommodate under the ADA, Plaintiff must show that she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) Defendant knew or had reason to know about her disability; (4) she requested a reasonable accommodation; and (5) Defendant failed to provide the reasonable accommodation. *Aldini v. Kroger Co.*, 628 F. App'x 347, 350 (6th Cir. 2015). And "once an accommodation is requested, the [defendant] has a duty to engage in the interactive process: a series of informal meetings and discussions to

'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Newell v. Cent. Mich. Univ. Bd. of Trs.*, No. 19-11988, 2020 U.S. Dist. LEXIS 142366, at *25-26 (E.D. Mich. Aug. 10, 2020) (quoting *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84-85 (6th Cir. 2012)); *see also Brumley v. UPS*, 909 F.3d 834, 840 (6th Cir. 2018) ("For employees seeking accommodations, the interactive process is mandatory, and both parties have a duty to participate in good faith.") (cleaned up).

Plaintiff alleges that she, after still not having fully recovered from her COVID infection, provided Defendant an April 13, 2022 doctor's note seeking "the accommodation of a brief additional period of time off to complete her recovery and provid[ing] a return-to-work date of July 14th, 2022." (ECF No. 31, PageID.349-50). According to Plaintiff, Defendant initially approved the request before firing her on April 22, 2022, and its failure to accommodate this request for a brief, additional leave extension was unlawful. Indeed, Plaintiff specifically argued in response to Defendant's summary judgment motion that she requested an extension of leave as an accommodation under the ADA. According to Defendant, however, Plaintiff merely sought "FMLA-type medical leave," which by itself does not constitute an ADA accommodation. (ECF No. 60, PageID.1185).

The Sixth Circuit has held that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Northeast*

*Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998); *see also Walsh v. UPS*, 201 F.3d 718, 726 (6th Cir. 2000) (under *Cehrs*, "a request for a definite and relatively short leave . . . , accompanied by a reasonable prospect of recovery," may constitute a reasonable ADA accommodation). At the same time, authority within this circuit provides that "FMLA leave is not a reasonable accommodation under the ADA." *Puckett v. Yates Servs., LLC*, No. 15-0083, 2016 U.S. Dist. LEXIS 23105, at *13 (M.D. Tenn. Feb. 24, 2016); *but see Schobert v. CSX Transp. Inc.*, 504 F. Supp. 3d 753, 788 (S.D. Oh. 2020) ("a request for FMLA leave is also a request [for a] reasonable accommodation under the ADA/Rehabilitation Act when the leave is designed to (1) 'accommodate' (allow the employee to continue performing essential functions of the job); (2) a protected disability (not just a serious health issue under the FMLA)"). "Accordingly, in order to [establish] that a FMLA leave request is a reasonable accommodation . . . , a plaintiff will have to [show] that: (1) the employee requested FMLA leave; (2) to address a protected 'disability' not just a 'serious health issue;' and (3) that FMLA leave would allow the employee to continue to perform the essential functions of his or her job." *Schobert*, 504 F. Supp. 3d at 788.

In *Puckett*, the Court granted the defendant' motion for summary judgment concerning an ADA failure-to-accommodate claim where the Plaintiff asserted "that she requested time off work, which was her request for FMLA leave *and* a request for a reasonable accommodation under the ADA." *Puckett*, 2016 U.S. Dist. LEXIS

23105 at *12-14 (emphasis in original). The Court concluded in relevant part that the plaintiff "never asked for a reasonable accommodation under the ADA." *Id.* at *14. In doing so, the Court specifically noted the plaintiff's testimony that she (1) "never asked anyone at Defendant for an accommodation," (2) "was capable of performing her job," (3) "never went to her supervisor or anyone in human resources to say she needed help to perform her job," and (4) "never used the word 'disability' when she talked with the human resources employees or anyone else at Defendant." *Id.* at*13-14. *Schobert*, in contrast, involved "the kind of request for FMLA leave that can double as a reasonable accommodation" because "both Plaintiffs allege that they requested FMLA leave to allow them to address an ongoing ailment that plausibly meets the definition of a 'disability,' and that, if they took the time off as planned, they could continue to perform the essential functions of their job." *Schobert*, 504 F. Supp. 3d at 790.

As an initial matter, the Court concludes that these cases are distinguishable from the instant facts because Plaintiff's April 2022 doctor's note did not merely request additional FMLA leave, it sought an extension of medical leave unrelated to the FMLA. Indeed, the magistrate judge found, and the record shows, that Plaintiff's FMLA leave expired before she sought the extension of leave from April until July 2022. And to the extent Plaintiff admitted that she neither requested nor engaged in the interactive process regarding any accommodation *other than* extended leave

beyond what the FMLA allowed, this does not definitively disprove that she appropriately sought non-FMLA leave to accommodate her continued recovery from a disabling COVID infection as contemplated by *Cehrs* and similar cases.[4]

In any event, the record if construed in Plaintiff's favor sufficiently shows that the specific leave request here was made to address an ongoing disability and thus should have noticed Defendant of Plaintiff's need for an ADA accommodation. *See Schobert*, 504 F. Supp. 3d at 788 ("a prospective request for periodic FMLA leave might put an employer on notice that the employee was seeking a disability accommodation for an ongoing ailment") (cleaned up). The Court acknowledges that the April 2022 doctor's note does not specifically reference the ADA or any disability, and that Plaintiff testified to dropping off the note without any discussion of her specific situation or any accommodations. But given that Plaintiff's FMLA leave had already been exhausted and in light of her numerous leave requests over the course of six months, Defendant should have known Plaintiff sought an accommodation for an ongoing ailment, one which the Court already decided qualifies as a disability under the ADA at this stage.

---

[4] Whether Plaintiff's leave request was reasonable under the ADA, including whether Plaintiff could perform the essential functions of her job if she took time off as requested—i.e., whether she demonstrated a clear prospect for recovery by a certain date, *see Cooley v. E. Tenn. Human Res. Agency, Inc.*, 720 F. App'x 734, 741 (6th Cir. 2017)—is more appropriately addressed in resolving Defendant's final objection regarding the reasonableness of indefinite leave requests and the magistrate judge purportedly ignoring caselaw in Defendant's favor on the issue.

Further, after Plaintiff dropped of the April 2022 leave request and was fired just over a week later, she specifically objected to the termination because "workers who have used up FMLA leave would still have rights under the ADA[] if they meet [the] ADA definition of a person with a disability. Accommodation is one such right." (ECF No. 50, PageID.963-64). Thus, even if the initial April 2022 leave request by itself was insufficiently clear to give notice, Defendant should have known by the time it received her grievance in late April/early May 2022 that she sought to extend her leave as a disability accommodation under the ADA, not as an extension of mere FLMA-type leave.[5]

Given these circumstances, the Court adopts the magistrate judge's finding that a genuine issue of material fact exists as to whether Plaintiff proposed an accommodation. Accepting at this stage that Plaintiff requested an accommodation under the ADA, this triggered Defendant's obligation to engage in the interactive process outlined above. And the record does not definitively show that Plaintiff, as opposed to Defendant, obstructed or otherwise failed to engage in this process. *Contra Brumley*, 909 F.3d at 840-41 (dismissing failure to accommodate claim

[5] To the extent Plaintiff's stated in her EEOC questionnaire that she never requested *any* accommodation, the Court concludes that this conflicts with the contemporary evidence discussed above showing otherwise, at least when construed in Plaintiff's favor. And it is for a jury, not the Court, to assign weight to different pieces of evidence when the facts materially conflict. Ultimately, the EEOC document does support that Plaintiff never requested an accommodation in this case, but the record as a whole is not so one sided to preclude submission of the issue to a jury.

where there was no genuine issue of fact that the plaintiff voluntarily abandoned the interactive process).

Rather, the record, construed in Plaintiff's favor, shows that Defendant fired Plaintiff without even considering any ADA accommodation essentially because she had exhausted FMLA leave and was still unable to return to work, and that Plaintiff subsequently clarified in her grievance that the request was for an ADA accommodation, not extended FMLA leave. Rather than engage in this request, Defendant merely confirmed her termination as warranted only because she requested more leave beyond that allowed by the FMLA. (*See* ECF No. 48-11). Again, however, Defendant should have known under the circumstances, at least when construed in Plaintiff's favor at this stage, that she sought to extend her leave as a disability accommodation under the ADA, not as an extension of mere FMLA-type leave. Defendant's objection is therefore overruled.

**4. Objection Four**

Next, Defendant argues that the magistrate judge erroneously relied in part on a heavily redacted EEOC document that was not proper evidence capable of creating a genuine issue of fact at summary judgment. (ECF No. 60, PageID.1187-88). However, while Plaintiff filed this document as an exhibit early on in the case and critically relied on it as an attachment to support her response to Defendant's motion, Defendant's reply never argued that the document—or any of Plaintiff's attached

evidence—was inadmissible or otherwise improper for consideration here. In fact, Defendant's reply explicitly acknowledged Plaintiff's partial argument "based on the EEOC memorandum" but merely argued that the record did not create any material factual dispute. (*See* ECF No. 51, PageID.1031-32).

"The Sixth Circuit has generally articulated that issues raised for the first time in objections to a magistrate judge's report and recommendation are deemed waived." *Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023) (cleaned up); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534-35 (6th Cir. 2001) ("We hold that the Commissioner cannot rely on any waiver by Heston to foreclose consideration of her claims on the merits, because the Commissioner failed to bring Heston's waiver to the attention of the Magistrate Judge or the District Judge."); *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (party "has a duty to put its best foot forward" before the magistrate judge in order to present the issue at a subsequent appeal). Because Defendant never raised this evidentiary issue before the magistrate judge in the first instance, the Court considers it waived. The Court therefore overrules Defendant's objection.

**5. Objection Five**

Lastly, Defendant argues that "the magistrate judge erred by stating '[Defendant] cites no case law' for the proposition that promising definite return dates but repeatedly missing them is not a reasonable request for an accommodation.

Defendant specifically cites *Haack v. Lapeer Cnty. Rd. Comm'n*, No. 23-12273, 2025 U.S. Dist. LEXIS 160830 (E.D. Mich. Aug. 19, 2025), and *Maat v. Cnty. of Ottawa*, 657 F. App'x 404 (6th Cir. 2016), as two cases the magistrate judge essentially ignored—and which provide that "repeated, broken promises to return after a lengthy period of medical leave are unreasonable as a matter of law."[6] (ECF No. 60, PageID.1188-90).

The magistrate judge, however, did explicitly address *Haack* and similar cases and the premise that "when an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." Applying this principle, the magistrate judge ultimately concluded that a question of fact exists concerning whether Plaintiff's request for extended leave was truly indefinite (i.e., whether Plaintiff demonstrated a clear prospect of recovery with respect to her anticipated July 2022 return date). (ECF No. 58, PageID.1164-65). Having considered Defendant's objection and reviewed the relevant cases de novo, the Court agrees with the magistrate judge's analysis.

---

[6] Defendant also cites *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292 (6th Cir. 2015), as a case the magistrate judge effectively ignored, but neither Defendant's motion nor reply brief mentioned *Aston* at all. The Court therefore concludes that Defendant has waived any reliance on this case by not identifying it for the magistrate judge in the first instance. *See Morgan*, 67 F.4th at 367 ("the Sixth Circuit has generally articulated that issues raised for the first time in objections to a magistrate judge's report and recommendation are deemed waived") (cleaned up).

As stated, "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs*, 155 F.3d at 783. The Sixth Circuit has since clarified when such circumstances exist, particularly concerning an extension of leave like that here:

> Although medical leave can sometimes constitute a reasonable accommodation under the ADA, our case law is clear that when the proposed accommodation is an extension of a prior significant period of leave, the plaintiff must have demonstrated a clear prospect for recovery. The relevant inquiry is whether the employee showed her employer a certain or credibly proven end to the leave. A vague estimate of the date that an employee can return to her job is insufficient.
>
> Thus, for an additional leave of absence to be a reasonable accommodation under the ADA, the employee must, at a minimum, provide the employer with an estimated, credible date when she can resume her essential duties.

*Cooley v. E. Tenn. Human Res. Agency, Inc.*, 720 F. App'x 734, 741 (6th Cir. 2017) (citations omitted; cleaned up); *see also Walsh*, 201 F.3d at 726-27 ("a request for a definite and relatively short leave . . . , accompanied by a reasonable prospect of recovery," may constitute a reasonable ADA accommodation; but "when the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide").

*Cooley* also provides as follows:

> Since *Cehrs*, we have held that even "[a] physician's estimate of a return date alone does not necessarily indicate a clear prospect for

> recovery." *Williams*[ *v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017)]; *see also Maat*, 657 F. App'x at 412-13 (holding that additional leave was not a reasonable accommodation where employee presented physician's note estimating a return date because such vague estimate of a return date was uncertain); *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 298 (6th Cir. 2015) (concluding that additional leave was not a reasonable accommodation even where employee had provided a physician's estimate of a return date because there was "no certain or credibly proven end [to the plaintiff's condition] in sight").

*Cooley*, 720 F. App'x at 742 (alterations in original).

Applying these principles, both *Maat* and *Haack* concluded that the plaintiffs' respective failure to accommodate claims failed as a matter of law because their requested leave was essentially for an indefinite period. *Maat*, 657 F. App'x at 412-14; *Haack*, 2025 U.S. Dist. LEXIS 160830 at *11-12.

In *Maat*, the Court concluded that the "requested leave was not definite in duration" and thus was unreasonable as a matter of law even though the plaintiff's doctor identified a definite end date in the leave request. *Maat*, 657 F. App'x at 413-14. Specifically, the Court concluded that there was so much uncertainty concerning the plaintiff's condition that "no rational juror . . . could conclude that Maat requested leave with a well-defined end." *Id.* at 413. This was based on the facts that (1) the plaintiff testified she only hoped she might be able to return by the doctor's provided date, (2) her conditioned worsened by the time she sought the extension of leave such that she was completely incapacitated and expected to need surgery and other extensive treatment, and (3) she had already worked on a reduced

schedule for seven months before seeking another month-and-a-half of leave. *See id.* at 408, 413.

Here, in contrast, there is no comparable uncertainty regarding Plaintiff's condition and prospect of recovery by the anticipated July 2022 return date. Most importantly, rather than expressing mere hope for the possibility of return, Plaintiff testified that she was able to work by that date despite some continued treatment for the aftereffects of COVID. Further, the record does not show that Plaintiff was completely incapacitated, needed any particularly intensive or invasive treatment like surgery, or that her condition otherwise worsened by the time she sought the extension at issue. Rather, the medical records Plaintiff provided with her various leave requests show at least some improvement. Specifically, Plaintiff's use of supplemental oxygen decreased—from 3 to 2 liters—between February and April 2022.

Construing these facts in Plaintiff's favor, the Court finds *Maan* distinguishable from the instant case and concludes that reasonable jurors could find that Plaintiff requested a definite period of leave with a clear prospect of recovery by the July 2022 return date. To the extent the earlier, repeated extensions of Plaintiff's anticipated return date (she initially sought 6 weeks of leave, then an additional 30 days, then another additional 60 days, then the four-month requested extension until July 2022 at issue here) call into question whether she would have

ultimately needed further extensions in an essentially indefinite manner, the Court concludes that the record is not so one-sided as to preclude resolution by a jury. And specifically concerning the earlier, repeated extensions and their potential similarity to the facts of *Haack*, the Court finds *Haack* similarly distinguishable from the circumstances here.

*Haack*, unlike *Maat*, does not connect any specific facts to its substantive analysis or ultimate decision concerning the failure to accommodate claim and definiteness issue, but the underlying facts are as follows:

> On June 30, 2021, . . . Haack submitted a doctor's note indicating that he was to be off work "until re-evaluated after lumbar x-rays." Based upon the doctor's note, the LCRC [defendant] allowed Haack to take medical leave.
>
> Subsequently, Haack's medical leave was extended numerous times based upon doctor's notes submitted on July 21, 2021; September 1, 2021; October 6, 2021; November 15, 2021; December 1, 2021; January 18, 2022; January 26, 2022; March 9, 2022; April 20, 2022; June 1, 2022; June 28, 2022; July 13, 2022; and August 10, 2022. On November 8, 2021, the LCRC requested a "firm date" when Haack thought he could return to work, as "the operational needs of our organization may be incompatible with leave of an indefinite duration."
>
> * * *
>
> On August 17, 2022, the LCRC sent Haack a letter indicating that it would not be extending his leave indefinitely and that it expected him to work on August 25, 2022, when his most recent doctor's note expired. But Haack did not return to work on that date, and instead submitted another doctor's note stating that he was to "remain off work for 6 more weeks. The next follow up is 10/03/22.

> The LCRC denied Haack's request to extend his leave, stating that it could not accommodate additional extensions and that it expected him to return to work as of August 25, 2022. If Haack needed "an alternative accommodation to allow you to perform all the essential functions of your job other than unpaid leave," he was to inform the LCRC of the nature of those accommodations.
>
> Haack did not report for work or request an alternative accommodation; he believed that his union contract entitled him to 24 months of unpaid medical leave. On September 1, 2022, the LCRC terminated Haack's employment, stating that it was unable to continue holding a position vacant or provide indefinite leave due to "operational demands." Haack does not dispute that he was unable to return to work, with or without an accommodation, as of August 2022. As of April 26, 2023, Haack's physician continued to recommend that he remain off work, until at least May 27, 2023.

*Haack*, 2025 U.S. Dist. LEXIS 160830 at *4-6, 11-12.

Critically, the facts of *Haack* are much more egregious than those here. First, the plaintiff in *Haack* requested 13 leave extensions over the course of one year, compared to Plaintiff's three extensions (including the request at issue) over a period of roughly four months. Further, and most importantly, the plaintiff in *Haack* sought six additional weeks upon expiration of his prior leave, which would have permitted his return to work in October 2022; the record showed, however, that the plaintiff was still recommended—per his physician—to remain off work until May 2023, approximately six months after the proposed return date at issue. Here, in contrast, there is no medical evidence or testimony showing that Plaintiff would have remained unable to work past the July 2022 return date. Rather, as discussed and particularly given the requirement to construe the evidence in Plaintiff's favor here,

the record provides support that Plaintiff's condition was improving such that she could have returned to work if given the additional three-month extension. And again, unlike in *Haack*, Plaintiff testified that she was able to work by the June 2022 date. Lastly, in addition to *Haack*'s factual differences and lack of substantive analysis explaining the factual basis of the Court's legal determination at issue, the case is not binding.

For the foregoing reasons, the Court rejects Defendant's reliance on both *Maat* and *Haack*, adopts the magistrate judge's conclusion that a question of fact exists concerning whether Plaintiff's request for extended leave was truly indefinite (i.e., whether Plaintiff demonstrated a clear prospect of recovery with respect to her anticipated July 2022 return date), and overrules Defendant's objection.

## IV. Conclusion

For the reasons given, IT IS ORDERED that Plaintiff's objections to the magistrate judge's reports and recommendations (ECF Nos. 58-59) are OVERRULED.

IT IS FURTHER ORDERED that Plaintiff's motion for voluntary dismissal (ECF No. 55) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment (ECF No. 48) is DENIED.

Dated: September 24, 2026

s/Robert J. White
Robert J. White
United States District Judge